**Alex SIERRA, Appellant,**

v.

**JOE D. HUGHES, INC. and James Arthur Alsabrook, Appellees.**

**No. 567.**

Court of Civil Appeals of Texas, Corpus Christi.

Nov. 19, 1970.

Rehearing Denied Dec. 10, 1970.

Guittard, Henderson, Jones & Lewis, O. F. Jones, Victoria, Fred P. Turner, Port Lavaca, for appellant.

Vinson, Elkins, Searls & Connally, William R. Eckhardt, III, Houston, for appellees.

OPINION

SHARPE, Justice.

This appeal is from a judgment rendered after jury trial that plaintiff-appellant take nothing from defendants-appellees.

Alex Sierra, appellant, brought this suit against Joe D. Hughes, Inc., and its employee, James Arthur Alsabrook, to recover

damages for personal injuries to appellant and damage to his 1962 Chevrolet automobile resulting from a collision on August 30, 1969, between appellant's car and a parked truck belonging to Joe D. Hughes, Inc., occurring on Texas Highway No. 35, a few miles south of Bay City, Matagorda County, Texas.

Appellant did not file a motion for new trial, and his five points of error on this appeal are solely based upon the refusal of the trial court to grant his motions to disregard the jury findings on special issues 7, 8 and 9 and for judgment non obstante veredicto.

The trial court submitted seventeen special issues to the jury, some of which were not answered because conditionally submitted. In answer to special issues 1 and 2 the jury found in substance that Alsabrook (operator of the Hughes truck) failed to place flares and warning lights to the rear of the truck in question and that such failure was a proximate cause of the collision. This was the only complete ground of liability established by the verdict against appellees, and the findings mentioned are not questioned on this appeal. The jury also found in answer to special issues number 7, 8 and 9 in substance that appellant Sierra, just prior to the collision, was driving with a portion of his automobile on the shoulder of the roadway, which constituted negligence and a proximate cause of the occurrence in question. This was the only complete ground of defense established by the verdict against appellant and it precluded his recovery.

The jury disposition of the remaining issues was as follows: The jury refused to find that Alsabrook failed to park the Hughes truck at such a distance off the highway as the same would have been parked by a reasonably prudent person in the exercise of ordinary care under the same or similar circumstances (issue 3). Issue 4, relating to proximate cause, was not answered. The jury also refused to find that Sierra failed to keep a proper lookout for other vehicles (issue 5). Issue 6, relating to proximate cause, was not answered. The jury found that Sierra failed to turn his automobile to the left just before the collision (issue 10); but refused to find that such failure was negligence (issue 11). Issue 12, relating to proximate cause, was not answered. The jury also refused to find that Sierra was driving at a greater rate of speed than a person using ordinary care would have driven (issue 13). Issue 14, relating to proximate cause, was not answered. The jury also refused to find that Sierra failed to make such application of brakes as a person using ordinary care would have made (issue 15). Issue 16, relating to proximate cause, was not answered. The damage issue (No. 17) was answered in the amount of $14,000.00.

On oral argument and submission of this case counsel for appellant advised the court that appellant would not insist upon his contentions concerning issue No. 7. We are therefore directly concerned only with appellant's contentions concerning special issues 8 and 9. Appellant's position with reference to issue 8 is that the conduct which the jury found to be negligent could not be negligence—as a matter of law—since it was in compliance with statutory direction (Point 3); that there is no evidence to support its submission and the jury answer thereto; and that it is not an ultimate issue (Point 5, in part). Appellant's contentions concerning special issue 9 are that appellant was not required to foresee appellees' negligent conduct which the jury found to be the proximate cause of the accident (Point 1); that there is no evidence to support its submission and the jury answer thereto (Point 2); and that it is not an ultimate issue (Point 5, in part).

On the trial of the case the testimony of five witnesses was heard. The plaintiff testified and also called as witnesses Mr. David Kile, a Texas Highway Patrolman and Dr. James Gilbert. The latter's testimony is not material to this appeal. The defendants offered the testimony (by deposition) of James Arthur Alsabrook and

that of Mr. Franklin D. Lewis, another truck driver employed by Hughes. Defendants also offered portions of a deposition given by appellant.

Plaintiff Sierra testified in substance as follows: On the morning of August 30, 1969, at about 2:30 o'clock A.M., he started on a trip from Point Comfort, Texas, to Beaumont, Texas, driving his 1962 Chevrolet automobile. As he was traveling on Texas Highway No. 35 and getting close to Bay City, Texas, a car pulled up behind him and its lights kept blinking. Sierra understood this to mean that the car was going to pass him. He then pulled his car off to the right and the other car passed. Sierra said he saw some red lights in front of him which looked like the lights from the rear of a truck. At first, he thought the truck was moving. Sierra further testified that he did not know how far he was from the truck when he realized it was stopped but said he was "pretty close." At that time Sierra was driving at about 60 miles per hour with his headlights on low beam. Sierra testified that when he realized the truck was stopped "Well, I tried to pull to my right to get off into the ditch, but I couldn't." Sierra further said that cars were approaching from the opposite direction but there was plenty of room for the car behind him to get around his car and back into the driving lane without danger. Sierra also testified as follows:

"Q You could have passed the truck, then, on your right hand side of the road and not hit the truck?

A If I had been in my lane, yes, sir, I probably would have missed him."

Sierra further testified that the road was straight for a considerable distance as he approached the scene of the accident. He could tell where the main lane of traffic stopped and where the shoulder began because of the difference in color. He also said that there was some shell to the right of the pavement and outside of the shell there was some grass and the ditch.

Alsabrook testified in substance as follows: On August 30, 1969, at about one to two o'clock A.M. he was driving a truck which was pulling a trailer or float belonging to Hughes on State Highway 35 going toward Bay City, Texas. The left front tire of the truck blew out and Alsabrook pulled off to the right of the road. He then caught a ride into Bay City in order to get someone to fix the tire. While at a filling station in Bay City a man came up and advised that a car had collided with the Hughes truck-trailer. Alsabrook then returned to where he left the truck and trailer. The trailer or float was forty feet long, eight feet wide and had dual axles.

David Kile testified in substance as follows: He is a Texas Highway patrolman stationed in Matagorda County. On August 30, 1969, at about 2:35 A.M., he was called to investigate an accident on Highway 35 involving the Hughes truck. He had previously, at about 2 A.M., observed that truck pulled off to the side of the road, at which time four white hazard flashers were on. When Kile returned to the scene the flashers were not on and neither Sierra or Alsabrook was there. Alsabrook returned shortly thereafter. Kile saw Sierra at the hospital later on. Kile identified four photographs taken at the said location shortly after he began his investigation. These showed the area surrounding the place of the collision and the locations of the Sierra automobile, the Hughes truck and the condition of those vehicles. Kile testified that each driving lane of the highway is 12 feet wide. Next outside of the driving lane is an improved or paved shoulder about 3½ feet wide. Next outside of the paved shoulder is a shell shoulder. Next outside of the shell shoulder is sodded grass extending to the property line. There is enough right-of-way to make a four lane highway there. The photographs showed that the Hughes truck was parked off of and outside of the paved or improved shoulder with its left wheels on the shell surface and its right wheels on the grass. Kile said that the

left hand or driver's side of the truck was located about 17 feet from the center line of the highway, and that the truck was in the same location as before the accident within a few inches. Kile said that the left rear wheel of the Hughes truck was one foot to a foot and a half off of the paved or improved shoulder. Concerning the path of the Sierra car, Kile testified, as best he could tell, that it veered off the shoulder, struck the left rear of the Hughes truck, veered off again and came to a resting place in the middle of the highway. The Sierra car was then located about 71 feet forward from the left rear of the Hughes truck. The right hand front and side of the Sierra car was extensively damaged.

Franklin D. Lewis, an employee of Hughes, testified that he arrived at the scene of the accident at about 10 or 11 o'clock A.M. on the date of the accident. His testimony related primarily to what he observed at that time and in some respects was cumulative of other evidence.

We now revert to special issues 7, 8 and 9, which the jury answered in substance as follows: (7) that just prior to the occurrence of the collision in question plaintiff Sierra was driving with a portion of his automobile on the shoulder of the roadway; (8) that the driving of plaintiff's automobile on the shoulder of the roadway was negligence; and (9) that such negligence was a proximate cause of the occurrence in question. The trial court submitted the usual definition of negligence which included "the doing of that which a person of ordinary prudence in the exercise of ordinary care would not do under the same or similar circumstances." The court also gave the usual definition of ordinary care.

We note appellant's position that issue no. 7 was objectionable because it does not distinguish between the paved and unpaved portions of the "shoulder" of the roadway along with his concession that it was not objected to on that ground and that the al-

leged error cannot be asserted on the present record. The record shows that the words "shoulder of the roadway" were used in both issues 7 and 8 and apparently were incorporated by reference in issue 9. It is apparent that the words "shoulder of the roadway" did not limit the consideration of the jury to the paved or unpaved portions of the shoulder. However, appellant says, particularly in his reply brief, that "the evidence is undisputed and conclusive that the impact occurred on the unpaved portion of the shoulder."

We now consider appellant's specific contentions concerning special issue 8. Under his point three appellant asserts that Sierra's conduct which the jury found to be negligent could not as a matter of law be negligence since it was in compliance with statutory direction. He here relies on Article 6701d, Sections 52(b) and 13(c), Vernon's Ann.Civ.St. Section 52(b) as amended effective May 27, 1969 reads in part as follows:

"Upon all roadways any vehicle proceeding at less than the normal speed of traffic at the time and place and under the conditions then existing shall be driven in the right-hand lane then available for traffic, or as close as practicable to the right-hand curb or edge of the roadway, except when overtaking and passing another vehicle * * *."

*    *    *    *    *    *

Article 6701d, Section 13(c), reads as follows:

"Roadway. That portion of a highway improved, designed, or ordinarily used for vehicular travel. In the event a highway includes two (2) or more separate roadways the term 'roadway' as used herein shall refer to any such roadway separately but not to all such roadways collectively."

Appellant's argument fails principally because the evidence herein authorized, if it did not compel, the finding that the collision in question occurred on the shell, un-

paved portion of the shoulder of the roadway. This fact is now conceded in appellant's reply brief. The above-mentioned statutory provisions relied on by appellant do not require the operator of an automobile to move over onto the shoulder of a roadway to allow a vehicle approaching from the rear to pass, and do not require the operator of an overtaken automobile to do more then drive "as close as practicable to the right-hand curb or edge of the roadway". Nor do they require a movement by the driver of the overtaken vehicle which cannot be made in safety. They do not authorize such operator to be negligent simply because a vehicle to the rear is about to pass.

Appellant also argues that before he could be found guilty of negligence in connection with special issue 8, there would have to be proof that the part of the roadway he was on was not "ordinarily used for vehicular travel." There are several Texas cases involving the above or similar language either found in Article 6701d or other statutes, and they generally hold that there is a difference between the main-travelled portion of the highway and the shoulder thereof. See Southerland v. Porter, 336 S.W.2d 841, 852 (Tex.Civ.App., Amarillo, 1960, wr. ref. n. r. e.); Hommel v. Southwestern Greyhound Lines, 195 S.W.2d 803 (Tex.Civ.App., Ft. Worth, 1946, n. w. h.); Jackson v. Edmondson, 129 S.W.2d 369 (Tex.Civ.App., Austin, 1939, reversed on other grounds, 136 Tex. 405, 151 S.W.2d 794 (1941).

In Southerland v. Porter, supra, the court held in part as follows:

"The Fort Worth Court of Civil Appeals in Hommel v. Southwestern Greyhound Lines, Inc., et al., 195 S.W.2d 803, 805, stated:

'It has frequently been held in this state, and in other jurisdictions having statutes similar to ours, that "the main traveled portion of any highway" means that portion commonly used for vehicular traffic and if, as in this case, there is a concrete or similar pavement provided for such use, the Penal Code, supra, is applicable only to that part of the highway. Jackson v. Edmondson, Tex.Civ.App., 129 S.W.2d 369, reversed on other grounds, but above holding approved by Supreme Court, 136 Tex. 405, 151 S.W.2d 794; Ligon v. Hommel, Tex.Civ.App., 189 S.W.2d 23. Last cited case was the venue trial of the same case now before us. See also Mlynar v. A. H. Merriman & Sons, 114 Conn. 647, 159 A. 658; Ketchum v. Pattee, 37 Cal.App.2d 122, 98 P.2d 1051.'"

In Jackson v. Edmondson, supra, the Court of Civil Appeals held in part as follows:

"Art. 827a, § 10, provides that 'no person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway, outside of any incorporated town or city.' Appellant's contention seems to be that since the car or cars were parked on the improved caliche shoulder, they were parked in violation of this statute; and that appellee was therefore guilty of contributory negligence per se in sitting in the car so parked, rendering appellant liable for only gross negligence in failing to see the parked car or cars before running into them. Manifestly it is the paved or hard surfaced portion of the highway which the statute prohibits the parking of vehicles on. It is a matter of common knowledge, as well as the evidence in the instant case, that the paved or hard surfaced portion of a highway is the 'main traveled portion' of it. It is also common knowledge that the graveled or caliche shoulder to any paved or hard surfaced highway is the place vehicles are usually parked for temporary repairs or to change tires, etc. Art. 827a, § 10, Penal Code; Art. 798, Penal Code; Keith Co. v. Minor, Tex.Civ.App., 103 S.W.2d 241; Tarry Warehouse & Storage v. Price, Tex.Civ.App., 76 S.W.2d 162. * * *"

Under the rules stated in the cited cases and on the record in this case we hold that the jury was entitled to believe that at the time of the collision and just prior thereto Sierra was not operating his automobile on that portion of the highway ordinarily used for vehicular travel. Additionally, it appears that the only testimony that an automobile to the rear of Sierra blinked its lights and passed him came from appellant and an issue of credibility was presented. See James T. Taylor, and Son, Inc. v. Arlington Ind. School Dist., 160 Tex. 617, 335 S.W.2d 371 (1960). The jury was not required to accept that testimony or to make a specific finding concerning the reason why Sierra operated his automobile on the shoulder of the roadway. Appellant's point three is without merit.

■ We next consider appellant's point four which asserts that there was no evidence to raise the issue and support the jury answer to special issue 8. In passing upon appellant's "no evidence" contentions we follow the settled rule that the evidence in the record supporting appellees' position here must be accepted as true and all conflicts and inconsistencies must be resolved in appellees' favor. We must disregard all evidence and the inferences therefrom favorable to appellant and interpret the evidence and all the reasonable intendments to be drawn therefrom most favorably to appellees. Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60 (1953); Anderson v. Moore, 448 S.W.2d 105 (Tex.Sup.1969). The jury was authorized to believe and find that just prior to the collision Sierra was driving his automobile at a speed of 60 miles per hour, that his lights were on dim, that he saw the Hughes truck lights ahead of him, that he turned his car to the right toward the ditch so that he was then driving with a portion of it on the shoulder of the roadway with his right wheels on the shell shoulder or surface; and the jury was entitled to conclude that a person of ordinary prudence in the exercise of ordinary care would not have driven his automobile on the shoulder of the roadway under the same or similar circumstances. Appellant's "no evidence" contention as to special issue 8 and his contention that it was not an ultimate issue is each overruled.

We next consider appellant's contentions concerning special issue No. 9, the proximate cause issue. The cases and statutory provisions relied on by appellant for the proposition that he was not required to anticipate negligence on the part of appellees are not in point here. Such cases also hold that a person in Sierra's situation must nevertheless exercise care for his own safety. In this case it is shown that Sierra actually discovered the presence of the Hughes truck ahead of him prior to the collision. But he did not continue driving on the main traveled portion of the roadway or even completely on the paved shoulder. Instead, he turned to his right and collided with the Hughes truck. Appellant conceded that he did not have to turn his car to the right but was in position to avoid the collision by staying on the main traveled portion of the highway. In this situation, despite the fact that the driver of the Hughes truck negligently failed to put out flares, the jury was authorized to believe and find that appellant could have foreseen that it would be dangerous to drive his automobile on the shoulder after discovery of the Hughes truck. The answers of the jury to other issues by which it refused to find appellant negligent in other respects cannot be given weight in considering the jury answers here to special issues 9 or 8. See Enloe v. Barfield, 422 S.W.2d 905 (Tex.Sup.1967).

The action of the trial court in refusing to disregard certain jury answers and to grant judgment non obstante veredicto pursuant to appellant's motions was proper. Appellant's points are overruled.

The judgment of the trial court is affirmed.